UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ELOISA VILLEGAS, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 10-00132 AJW |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed. [See JS 2-3]. Plaintiff filed an application for disability insurance benefits and SSI benefits on October 18, 2007. She alleged that she had been disabled since August 1, 2007 due to a heart problem, kidney problem, heart attacks, and high blood pressure. [JS 2; Administrative Record ("AR") 133-141, 176]. In a March 20, 2009 written hearing decision that constitutes the Commissioner's final decision in this matter, an Administrative Law Judge (the "ALJ") concluded that plaintiff was not disabled. [AR19-31]. The ALJ found that plaintiff had severe impairments consisting of

coronary artery disease, status post coronary bypass graft surgeries, and tendinitis of both hands, but that her impairments did not preclude her from performing a range of light work. The ALJ found that plaintiff could not perform her past relevant work as a waitress and lost and found clerk, but that she could perform alternative work available in significant numbers in the national economy. [JS 3; AR 19-31].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Duty to develop record regarding plaintiff's subjective symptoms**

Plaintiff contends that the ALJ erred in failing adequately to develop the record regarding her subjective symptoms and limitations. [See JS 4-25].

The ALJ is not "'a mere umpire' during disability proceedings. Rather, the ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per curiam) and Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). When a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. The ALJ must be especially diligent in ensuring that favorable

as well as unfavorable facts and circumstances are elicited." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

Plaintiff was not represented during the hearing and waived her right to counsel. [See AR 75-76]. After asking plaintiff to describe her past work, the ALJ said: "[L]et's just hear very briefly about your medical problems." [AR 78]. The ALJ remarked that plaintiff had submitted a "stack of papers" and asked whether she had submitted all of her relevant records. [AR 78]. Plaintiff replied that she "didn't have the records for my orthopedic doctor . . . and then my Dr. Enriquez . . ., so I'm missing two." [AR 79].[1] The following colloquy ensued:

BY THE ADMINISTRATIVE LAW JUDGE:

Q   Yeah, but what is your orthopedist treating you for?
A   For my hands.
Q   For your hands.
A   For my arthritis.
Q   Okay. What treatment are you getting for your arthritis?
A   They gave me a kind of gloves to sleep in, with it at nighttime, that's like heavy metal –
Q   Uh-huh.
A   – and then he put me shots, the name of the medicine that was Fastalona [phonetic] or something like that.
Q   All right. You're getting –
A   That hurts.
Q   – steroid shots in your fingers –
A   Yeah.
Q   – is that it?
A   Yeah.

[AR 80].

---

[1] Dr. Enriquez was a physician at the M. Baculi Medical Clinic, one of the facilities where plaintiff was treated for internal medical problems. [See AR 25, 89-90 178, 412-488, 489-516].

3

1   The ALJ ended his examination of plaintiff and received testimony from the medical expert. At one
2   point during that testimony, the ALJ asked plaintiff where in her hands she received injections, and she
3   showed him. [AR 83]. After the medical expert finished testifying, a vocational expert testified. When he
4   concluded, the ALJ told plaintiff that he was going to give her two weeks to get him any orthopedic reports
5   that were "available to show . . . the extent of the problem with your hands." [AR 89-90]. Plaintiff asked,
6   "And then you need the, the record from my regular doctor, from my family doctor?" The ALJ replied that
7   he would "consider anything that's brought to my attention within the next two weeks," and closed the
8   hearing. [AR 90-91].

9   The marked hearing exhibits (that is, those that appear to have been submitted before or during the
10  February 19, 2009 hearing) include treatment reports covering the period from February 18, 2008 to
11  November 24, 2008 from Dr. Enriquez. [See AR 489-516]. Additional treatment records from Dr. Truong,
12  plaintiff's podiatrist [AR 32-39]; Dr. Stevenson, her orthopedic surgeon [AR 40-43]; and possibly
13  duplicative treatment records from Dr. Enriquez [see AR 44-72] were stamped "received" on March 5, 2009,
14  after the hearing. [See AR 32, 40, 44], The ALJ summarized the additional evidence in his decision. [See
15  AR 25-26].

16  In his written hearing decision, the ALJ stated that he had "carefully considered" plaintiff's
17  subjective testimony regarding "pain and other symptoms," functional limitations, and daily activities [AR
18  26-27], along with the "extent to which these symptoms can reasonably be accepted as consistent with the
19  objective medical evidence and other evidence . . . ." [AR 28]. The ALJ summarized the "pertinent parts"
20  of plaintiff's testimony" as follows:

> She is age 53. She was born in Mexico. She is a naturalized citizen. She came to the U.S
> 15 years ago. She attended high school in Compton, California. She graduated from high
> school. She last worked in early 2008. She worked as a manager at a community center.
> She worked in the kitchen and served food and carried trays. She also did paperwork.
> Before that, she worked at National Car Rental. In this job was a secretary in the lost and
> found department. She answered phones. She is seeing an orthopedic doctor for her hands.
> The doctor gave her a kind of gloves for her to wear at nighttime when she sleeps. She also
> received steroid shots for her fingers.

4

[AR 27].

The ALJ found that plaintiff's "allegations are not fully credible" and gave "only limited weight to her testimony, her written allegations in the file, and the 'subjective' portion of the medical records." [AR 27]. The ALJ based his credibility assessment on plaintiff's "largely conservative" treatment history, the absence of emergency room visits for physical or mental symptoms, the absence of "significant hospitalizations in the past five years," the lack of evidence that she suffered adverse side effects from her medications, and the absence of evidence "that her daily activities are severely limited by her impairments." [AR 27].

The controlling issue "is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by Cox" to develop the record and ensure that favorable as well as unfavorable facts are elicited. Vidal, 637 F.2d at 714. In the circumstances of this case, the ALJ did not meet his burden to fully and fairly develop the record. The ALJ said that he would hear only "briefly" about plaintiff's "medical problems." He posed a few brief, superficial questions about the treatment plaintiff had received for her hands. Even though plaintiff was not represented by counsel, the ALJ asked her no questions about pain or other symptoms and how her symptoms affected her functional abilities. The ALJ did not ask plaintiff about her ability to lift, carry, sit, stand, walk, or engage in manipulative or postural activities. He did not inquire about plaintiff's daily activities. He did not elicit any testimony about her medications and found in his opinion that there was no evidence of adverse effects from medication; however, plaintiff said in a disability report that her medications caused sleepiness, rapid heart rate, and high blood pressure. [See AR 187]. Despite acknowledging in his decision that plaintiff had complained of "depression and/or anxiety to her primary physicians" and had "been prescribed anti-depressant and anti-anxiety medications," the ALJ did not ask plaintiff about her mental condition during the hearing. [AR 29]. The ALJ also failed to pose any open-ended questions that would have permitted or encouraged plaintiff to volunteer unsolicited information about her symptoms and limitations.

The ALJ's failure to elicit favorable as well as unfavorable facts prejudiced plaintiff because the ALJ relied on the inadequately developed record to deny benefits. See Cox, 587 F.2d at 991 (holding that where the ALJ "made no effort to, and gave plaintiff little opportunity to, elaborate further" on a critical issue, the claimant was prejudiced by lack of counsel). That prejudice is magnified by the paucity of other evidence

1  in the record regarding plaintiff's subjective complaints and limitations. In the "Disability Report - Adult"
2  filed with her application, plaintiff wrote that her impairments limited her ability to work due to "no lifting,"
3  constant pain in her lower back, weakness, dizziness, poor vision, and she said that she could not "stand or
4  sit for long." [AR 176]. Asked in a "Disability Report - Appeal" whether she had new physical or mental
5  limitations, plaintiff said that she had depression, insomnia, anxiety, pain in her hands, hips, and left foot.
6  [AR 185]. In addition to these disability reports, the record ordinarily includes a daily activities
7  questionnaire completed by the claimant, and often also includes a "third party function report" completed
8  by a lay witness who has personal knowledge of the claimant's condition. The record in this case did not
9  contain either of those reports, a fact that should have prompted the ALJ to take extra care to elicit testimony
10 from plaintiff and develop an adequate hearing record.

11       In addition, the ALJ relied Dr. Alpern's expert testimony without giving him the opportunity to
12 review additional medical evidence submitted by plaintiff during and after the hearing. [See AR 27, 78, 80-
13 81]. That omission is troubling because Dr. Alpern testified that plaintiff might have restrictions in
14 fingering as well as handling, but that "it's hard to tell from the records. . . . [I]t's a question mark. There's
15 insufficient records. . . . I don't know where the injections [were], whether they were in the wrist or the
16 fingers or where." [AR 83-84]. Even after the ALJ asked plaintiff to explain where the injections had been
17 made, Dr. Alpern remarked that it was "[h]ard to tell" exactly where they were given. [AR 83]. The ALJ
18 replied, "Yeah. All right. Let's leave that up in the air for a moment." [AR 83]. The ALJ did not return to
19 that issue during the hearing.

20       After the hearing, plaintiff submitted a report from Dr. Stevenson, her treating orthopedist, stating
21 that she would have "permanent residuals" from "[illegible] tendinitis R/L wrist" and "arthritis thumb
22 metacarpal-carpal," and that plaintiff would require future medical care in the form of "[illegible]
23 injections." [AR 42]. The ALJ concluded that Dr. Stevenson's report was "vague," "lacking in support,"
24 and entitled to "little weight" even though Dr. Alpern testified that the record before him was not
25 sufficiently developed regarding plaintiff's hand impairment and that additional manipulative restrictions
26 might be warranted. At a minimum, the ALJ should have asked Dr. Alpern to review Dr. Stevenson's report
27 and incorporate it into his opinion. Cf. Widmark, 454 F.3d at 1069 (holding that the ALJ did not "develop
28 a full and fair record with regard to [the claimant's] ability to do fine manipulation" where the ALJ posed

6

"a single, open-ended question" to the claimant about his health and working capabilities but asked no specific questions about his documented thumb injury).

The hearing lasted only 18 minutes in total and resulted in a transcript of about 15 pages of testimony. Although there is no requirement that a hearing last for a specified period of time, "[a]n adequate hearing record is indispensable because a reviewing court may consider only the [Commissioner's] final decision, the evidence in the administrative transcript on which the decision was based, and the pleadings." Higbee, 975 F.2d at 562. The brevity of the hearing in this case bolsters the conclusion that the ALJ did not adequately develop the record. See Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (explaining that "[a]lthough the length of a hearing is not dispositive, it is a consideration," and concluding that a ten-minute hearing that was transcribed in eleven pages was inadequate); Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1052 (6th Cir. 1983) (concluding that the ALJ did not probe sufficiently during a twenty-five minute hearing); Rodriguez v. Callahan, 971 F. Supp. 150, 153-154 (S.D.N.Y. 1997) (remanding for fuller development of the record where the ALJ "spent very little time questioning [the claimant], as evidenced by a transcript that consumes just over 7 pages"); cf. Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir.1991) (holding that a twenty-six minute hearing that yielded sixteen pages of testimony was adequate because "the ALJ questioned [the claimant] extensively about" his condition, treatment, what he had been told about his condition by his doctors, his medication, his daily routines, and how his illness had affected them, and also took testimony from the claimant's wife and friend).

The ALJ committed legal error by failing to develop a full and fair record that reflected favorable as well as unfavorable facts, by basing his negative credibility finding on an insufficiently developed record, and by failing to take steps to resolve the ambiguity that existed in the record regarding plaintiff's hand impairment.

**Remedy**

Because the record is not adequately developed, a remand for further administrative proceedings is required. On remand, the ALJ must conduct another hearing, develop appropriate additional testimony and documentary evidence, and issue a new hearing decision. See Tonapetyan v. Halter, 242 F.3d 1144, 1151 (9th Cir. 2001) (remanding "for further development of the record" and "for further appropriate proceedings in light of that additional development" where the ALJ failed to develop the record fully and fairly).

**Conclusion**

The Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

November 1, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge